IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | Case No: 1:21-CR-86-PLF |
| : | |
| **ROBERT SANFORD** : | |
| : | |
| **Defendant.** : | |

## MOTION TO RECONSIDER DETENTION

COMES NOW the defendant, Robert Sanford, by and through undersigned counsel, and pursuant to 18 U.S.C. § 3145(b), and moves this Honorable Court to reconsider the order of detention imposed by the Honorable Henry S. Perkin, magistrate judge, in the Eastern District of Pennsylvania on January 14, 2021.

## BACKGROUND

On January 13, 2021, a criminal complaint was issued against Mr. Sanford charging him with knowingly entering or remaining in any restricted building or grounds without lawful authority, in violation of 18 U.S.C. § 1752(a)(1) and (2); disorderly or disruptive conduct on capitol grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); civil disorder, in violation of 18 U.S.C. § 231(a)(3); and assaulting, resisting, or impeding certain officers while engaged in the performance of official duties, in violation of 18 U.S.C. § 111(a)(1).  On January 14, 2021, the warrant was executed by a special agent of the F.B.I. and Mr. Stanton appeared later that day before the Honorable Henry S. Perkin for bail status and arraignment hearing. (exhibit 1 "Transcript")

During the hearing, the government conceded that this case does not involve a presumption of detention. (Transcript at pg 9)  Nevertheless, the government argued that Mr. Sanford should be detained because he poses both a risk of flight and a danger to the community.

(Transcript at pg 9)  With regard to danger, the government argued that the offense conduct described in the probable cause affidavit was against several law enforcement officers and involved a dangerous weapon, to wit: a fire extinguisher. (Transcript at pg 9-10)  The government further argued that Mr. Sanford traveled to the District "as part of a group who attended both rallies with the President, and then subsequently went to the U.S. Capitol grounds for the purpose of basically participating in a riot that was an insurrection against the United States Government." (Transcript at pg 10)  With regard to nonappearance, the government argued that Mr. Sanford crossed numerous state lines in order to travel to the District and has no ties to the District. (Transcript at pg 10)

      Defense counsel in turn argued that Mr. Sanford did not pose a danger because he did not travel to the District for the purpose of a riot.  Instead, having not traveled to the District since the age of 13, he took the opportunity to take a free bus to the protests and had no plan beyond that. (Transcript at pg 11-12)  In addition, Mr. Sanford did not enter the capitol building and is not a member of any extremist group involved with planning January 6th. (Transcript at pg 13-14)  Defense counsel argued that Mr. Sanford did not pose a flight risk because he is a retired firefighter with twenty-six years of service, lived at the same address for twenty-three years, married for twenty-two years, and has three children. (Transcript at pg 12)  Further, Mr. Sanford has no prior criminal history and no substance abuse or mental health history. (Transcript at pg 12)  Mr. Sanford also self-surrendered to the F.B.I. and turned over his passport. (Transcript at pg 12)

      In response, the government argued the during the execution of a search warrant at Mr. Sanford's residence, agents recovered a t-shirt associated with the Proud Boys, which had been affiliated with the activity on January 6th. (Transcript at pg 14)

In ruling, the Court noted that there were conditions that would resolve the concerns about risk of flight. (Transcript at pg 15) However, there were not conditions that the Court could impose that would resolve the danger to the community. (Transcript at pg 15) In ruling, the Court noted the affidavit in support of the complaint showing a photo of Mr. Sanford "poised to strike a Capitol Police officer… with a fire extinguisher" and that he was in the crowd that breached the Capitol perimeter. (Transcript at pg 15)  Subsequently, Mr. Sanford was remanded to the custody of the U.S. Marshal Service and this matter was transferred to this district.

 Later, on January 14, 2021, the government advised defense counsel that a t-shirt related to the Proud Boys was not discovered during the search of Mr. Sanford's residence as it had mistakenly represented to the Court during the detention hearing. In fact, no evidence associated with or linking Mr. Sanford to any extremist group was located during the F.B.I.'s extensive search of the residence. On January 26, 2021, defense counsel filed a motion to reconsider Mr. Sanford's detention based on this development, however, the matter had already been transferred to this district and the Eastern District of Pennsylvania no longer had jurisdiction.

On February 5, 2021, a grand jury returned a five count indictment against Mr. Sanford charging him with: count one, civil disorder, in violation of 18 U.S.C. § 231(a)(3); count two, assaulting, resisting, or impeding certain officers while engaged in the performance of official duties, in violation of 18 U.S.C. § 111(a)(1) and (b); count three, entering or remaining in any restricted building or grounds without lawful authority, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A); count four, disorderly or disruptive conduct on capitol grounds, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A); and count five, act of physical violence in the capitol grounds or buildings, in violation of 40 U.S.C. § 5104(e)(2)(D).

On February 17, 2021, Mr. Sanford was transported to this district and appeared for arraignment on February 19, 2021.  On February 25, 2021, Mr. Sanford appeared before this court for status and the matter was scheduled for a reconsideration of detention hearing on March 2, 2021. On February 25, 2021, a Pretrial Services Report was filed that indicated that no conditions or combination of conditions can reasonably assure the defendant's appearance or safety to the community.  However, this report was generated without interviewing Mr. Sanford.

## ARGUMENT

### I.      Standard of Review

Pursuant to 18 U.S.C. § 3145(b), this Court has the authority to reconsider a detention order issued by a magistrate judge upon motion by the defense.  This Court's review of the magistrate judge's detention order is *de novo*.  *United States v. Karni*, 298 F.Supp.2d 129, 130 (D.D.C. 2004).  The district court must make its own *de novo* determination of the facts with no deference to the findings or legal conclusions of the magistrate judge.  *United States v. Koenig*, 912 F.2d 1190, 119293 (9th Cir. 1990); *United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987).

### II.     The Bail Reform Act Favors Mr. Sanford's Release.

The burden of proof in a bond proceeding is on the government.  As the Supreme Court has emphasized, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).  Thus, the Bail Reform Act requires that a person charged with an offense be released on personal recognizance or upon execution of an unsecured bond unless further conditions are necessary to reasonably assure attendance at trial and the safety of the community. See 18 U.S.C. §§ 3142(a) & (b). "The . . . drafters aimed toward a narrowly-drafted statute . . . addressed to the danger

from 'a small but identifiable group of particularly dangerous defendants.'" *United States v. Singleton*, 182 F. 3d 7, 13 (D.C. Cir. 1999) (emphasis added) (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, reprinted in U.S. Code Cong. & Ad. News 3189, 1983 WL 25404, at *3189) "[A]ll doubts regarding the propriety of release [must be resolved] in the defendant's favor." *United States v. Sanchez-Martinez*, No. 13-CR-236, 2013 WL 3662871, at *5 (D. Colo. July 12, 2013). The Act permits pretrial detention only if no condition or combination of conditions exists that would provide that reasonable assurance. 18 U.S.C. § 3142(e). The sole exception to the law's strong preference for release is the list of so-called "presumption" offenses, where the burden is on the defense to rebut the need for detention. *Id.* This is not a § 3142(e) "presumption" case, and thus the BRA strongly favors release unless the government carries it burden to prove otherwise. *See, e.g., United States v. Giordano*, 370 F. Supp. 2d 1256, 1261 (S.D. Fla. 2005) (BRA favors release).

The court may not detain an individual unless the government proves by clear and convincing evidence that no combination of conditions can reasonably assure the safety of the community; or proves by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's presence at future proceedings. 18 U.S.C. §3142(f); *United States v. Stewart*, 19 F. App'x 46, 48-49 (4th Cir. 2001); *United States v. King*, 849 F.2d 485, 489 (11th Cir. 1988). The Bail Reform Act contemplates only that a court be able to "reasonably assure," rather than guarantee, the safety of the community. *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008). In determining whether any combination of conditions is sufficient to assure the objectives of pretrial release, the court cannot read § 3142 to require a guarantee against flight or danger. *See United States v. Portes*, 786 F.2d 758, 764 n.7 (7th Cir. 1985); *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985); *United States v. Orta*, 760 F.2d 887

(8th Cir. 1985). If the plan for pretrial release conditions offered by a defendant is reasonable, and provides a means of monitoring his compliance with the terms and conditions of pretrial release, then the defendant should not be detained. *See United States v. Walters*, 89 F. Supp. 2d 1217, 1222 (D. Kan. 2000).

There is not a presumption of detention in this case and certainly there are conditions or a combination of conditions that will reasonably assure Mr. Sanford's appearance and the safety of the community. Mr. Sanford does not pose a danger to the community. He is 55 years old and has no prior criminal history. He traveled to the District on a bus organized by Turning Point USA, a mainstream young conservative organization, with approximately fifty other people. Mr. Sanford brought a backpack that contained sandwiches, snacks, water, and first aid supplies. After 26 years of service as a firefighter, he always has first aid supplies on hand. When he arrived at the Washington monument there was already a huge crowd. He listened to the speakers then marched to the Capitol along with the crowd. When he arrived at the Capitol there were already thousands of people on all sides of the building and Mr. Sanford does not recall seeing a perimeter fence. It is noteworthy that Mr. Sanford did not enter or attempt to enter the capitol building and is not a member of or otherwise associated with any extremist group involved with planning January 6th. He did not travel to the Capitol with an extremist group. He did not bring a weapon or wear tactical gear. He did not coordinate with other individuals once at the Capitol. However, video clearly shows him throwing a fire extinguisher, that had the weight of being empty, into a crowd of police officers, striking three. Even though there was potential for injury as a result of this offense conduct, none of the officers appear to have been physically injured. While the Court below found that Mr. Sanford poses a danger to the community, that ruling occurred prior to the inauguration when there was fear that right wing

extremists may coordinate another violent protest and with the mistaken understanding that Mr. Sanford was associated with the Proud Boys. Neither of those concerns remain at this time. Furthermore, Mr. Sanford has repeatedly expressed contrition to undersigned counsel for his actions on January 6th and is adamant that he has no interest in protest or politics going forward. As a result, the safety of the community would be reasonably assured if Mr. Sanford were released with conditions or a combination of conditions such as 24-hour home confinement with electronic monitoring and/or has a third-party custodian.

Mr. Sanford does not pose a flight risk. Although he resides outside the District, his home is less than two hours from the courthouse. Mr. Sanford grew up in Chester, Pennsylvania, and has extensive ties to that community. He is a retired firefighter with twenty-six years of service, lived at the same address for twenty-three years, married for twenty-two years, has three children, and a mortgage. Further, Mr. Sanford has no prior criminal history and no substance abuse or mental health history. Mr. Sanford also self-surrendered to the F.B.I. and turned over his passport. It is also noteworthy that a close friend reported him to the F.B.I. so clearly his support network will help enforce any condition or combination of conditions that this Court may impose.

Accordingly, Mr. Sanford respectfully requests that this Court reconsider the detention order issued in this case and release Mr. Sanford to home confinement with electronic monitoring and/or a third-party custodian along with any other conditions or combination of conditions that this Court believes are appropriate to reasonably assure the safety of the community and Mr. Sanford's presence at future proceedings.

Respectfully submitted,
Robert Sanford

By: /s/ *Andrew M. Stewart* .
ANDREW M. STEWART, ESQ.
D.C. Bar No. 490984
Attorney for the Defendant
2007 15th Street North, Suite 201
Arlington, VA 22201
Phone: 703-248-0626
Fax: 703-248-8971
andrew.m.stewart.esq@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of February, 2021, I electronically filed the foregoing motion with the clerk of the court using the CM/ECF system, which will send an electronic copy to the following:

Janani Iyengar
Assistant United States Attorney
U.S. Attorney's Office, Eastern District of Virginia
555 4th Street, NW
Washington, D.C. 20001

By: /s/ *Andrew M. Stewart* .
ANDREW M. STEWART, ESQ.
D.C. Bar No. 490984
Attorney for the Defendant
2007 15th Street North, Suite 201
Arlington, VA 22201
Phone: 703-248-0626
Fax: 703-248-8971
andrew.m.stewart.esq@gmail.com