```
 1                    UNITED STATES DISTRICT COURT

 2                  EASTERN DISTRICT OF PENNSYLVANIA

 3   UNITED STATES OF AMERICA,
                                    Case No. 5:21-mj-00061
 4              Plaintiff,

 5   v.                             Allentown, Pennsylvania
                                    January 14, 2021
 6   ROBERT SANFORD,                1:52 p.m.
                                    conducted via video conference
 7              Defendant.

 8
            TRANSCRIPT OF BAIL STATUS AND ARRAIGNMENT HEARING
 9             BEFORE THE HONORABLE HENRY S. PERKIN
                   UNITED STATES MAGISTRATE JUDGE
10

11   APPEARANCES:
     For the Plaintiff:           Sean McDonnell, Esquire
12                                U.S. Attorney's Office
                                  615 Chestnut Street
13                                Suite 1250
                                  Philadelphia, PA 19106
14
     For the Plaintiff:           Janani Iyengar, Esquire
15                                U.S. Attorney's Office
                                  555 4th Street, NW
16                                Washington, D.C. 20001

17   For the Defendant:           Enrique A. Latoison, Esquire
                                  Attorney at Law
18                                212 W. Front Street
                                  Suite 300
19                                Media, Pa 19063

20   Court Recorder:              Ken Duvak

21   Transcription Service:       Chris Hwang
                                  Abba Reporting
22                                PO Box 223282
                                  Chantilly, Virginia  20153
23

24   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.
25
```

**INDEX**

|  | Page |
|---|---|
| Court's Ruling | 7 |
| Motion, granted | 8 |
| Motion, granted | 15 |

1        (Call to order at 1:52 p.m.)

2              THE COURT:  I believe the final case this afternoon
3    is United States of America v. Sanford.  Am I correct?  And
4    we're waiting for Mr. Sanford.

5              THE DEFENDANT:  That would be me, Your Honor.  Good
6    afternoon.

7              THE COURT:  Good afternoon.

8              Mr. Latoison, correct?

9              MR. LATOISON:  Yes, Your Honor.

10             THE COURT:  Okay, thank you.

11             And do we have Janani Iyengar with us?

12             MS. IYENGAR:  Yes, Your Honor, Janani Iyengar for the
13   United States.

14             THE COURT:  Did I butcher your name?

15             MS. IYENGAR:  No, that's fine.

16             THE COURT:  All right.  Thank you.  I was hoping not.

17             All right, I believe we're all here (indiscernible)
18   case.  This case is in the matter of the United States of
19   America v. Robert Sanford, which bears number 21-MJ-61 in the
20   United States District Court for the Eastern District of
21   Pennsylvania.

22             It also bears number 21-MJ-52 in the District of
23   Columbia.  This is Mr. Sanford's initial appearance with regard
24   to the charges in this matter in the complaint and warrant that
25   I will get to in a moment.

1            Let the record reflect that these proceedings are
2    (indiscernible) video pursuant to the Cares Act authority and
3    standing orders of Chief Judge Sanchez in the Eastern District
4    of Pennsylvania.
5            These proceedings are being taped now for the record
6    by our Court Recorder.
7            Present on behalf of the United States
8    (indiscernible) from the Eastern District of Pennsylvania
9    (indiscernible) Attorney Sean McDonnell and for the District of
10   Columbia, Assistant United States Attorney Janani Iyengar.
11           The Defendant is represented record by Attorney
12   Enrique Latoison.  All are present and I note that Mr. Sanford
13   is present as well.  And I'm going to first ask Mr. Sanford if
14   you can introduce yourself.
15           THE DEFENDANT:  You want me to start, Your Honor?
16           THE COURT:  Are you able to hear me?
17           THE DEFENDANT:  I am hearing a little, but yeah, I
18   can year you, yes.
19           THE COURT:  If you need to move closer, feel free.  I
20   want to make sure you can hear the proceedings.  Are you able
21   to hear me?
22           THE DEFENDANT:  Yes, sir.
23           THE COURT:  All right, thank you.  Let me also advise
24   the attorneys for the United States of their obligations under
25   Brady v. Maryland, Giglio v. United States and subsequent case

1   (indiscernible) the disposal (indiscernible) to the Defense as
2   to criminal liability on the charged offenses for mitigation of
3   any punishment that may be imposed.
4           That includes, but is not limited to information
5   covered by Brady and Giglio that they (indiscernible) failed on
6   the credibility and accuracy of the Government witnesses or on
7   the admissibility of Government evidence.
8           The Court also notifies the Prosecutors of the
9   possible consequences of a violation of this order, including
10  the granting of a continuance of (indiscernible) disciplinary
11  referral, and any other relief authorized.
12          I want to note that through prior advice, there are
13  maybe several members of the media and the press that are
14  listening to this hearing.  I must remind them that you are not
15  authorized to take a video of court proceedings or otherwise to
16  record them.
17          But the recording that is made and the official
18  report of these proceedings by the Court is available
19  through -- upon appropriate request.
20          With that, Mr. Sanford, I want to advise you that you
21  have the right to remain silent and anything you say
22  (indiscernible) can be used against you.
23          You also have the right to a lawyer.  And if at any
24  time, you cannot afford a lawyer, I will appoint one for you.
25          To engage the services (indiscernible), am I correct?

1     THE DEFENDANT:  Yes, sir, Your Honor.

2     THE COURT:  So you are not (indiscernible) that I
3  appoint attorney, is that correct?

4     THE DEFENDANT:  My attorney is on the screen.

5     THE COURT:  Yes, no, you do not need a court-
6  appointed attorney?

7     THE DEFENDANT:  You're coming in and out.  You're
8  breaking up.  I can't understand you.

9     THE COURT:  Thank you for telling me that.  Let me
10 see if you can.  You do (indiscernible) court-appointed
11 attorney appointed for you by the Court; is that correct, sir?

12    THE DEFENDANT:  Yes.

13    THE COURT:  Okay.  If at any time you can't hear,
14 just raise your hand or tell me, okay?  I want to stop and make
15 sure that you can hear everyone.

16    All right, very good.  Bear with me one second,
17 everybody, so I get the right paper in front of me.

18    Mr. Sanford, I want to tell you what you're charged
19 with in this complaint and warrant.  You're charged with a
20 violation of Title 18 of the United States Code, §1752(a)(1) and
21 (a)(2).  That's a charge of Knowingly Entering or Remaining in
22 Any Restricted Building or Grounds Without Lawful Authority.

23    You're also charged with a violation of Title 40 of
24 the United States Code, §5104(e)(2)(D).  That's a charge of
25 Disorderly or Destructive Conduct on Capitol Grounds.

1            You're charged with a violation of Title 18 of the

2   United States Code, §231(a)(3) and a charge of Civil Disorder.

3            And you're charged with -- finally with the offense

4   of 18 United States Code 111(a)(1) which is Assaulting,

5   Resisting, or Impeding Certain Officers while Engaged in the

6   Performance Of Official Duties.

7            This is a complaint warrant.  You are not required to

8   respond to the complaint warrant today, but you do have a right

9   to a hearing to determine whether there's probable cause for

10  the issuance of this complaint warrant.

11           Mr. Latoison, can you tell me whether or not your

12  client wishes to have such a hearing in this District or wishes

13  to have a hearing in the District of Columbia or a hearing at

14  all?

15           MR. LATOISON:  Good afternoon, Your Honor.  Enrique

16  Latoison, ID number 92931.  After speaking with the AUSA, we do

17  waive our right to the probable cause hearing, Your Honor.

18  We'd like to argue detention.

19           THE COURT:  Thank you.  On that basis, I find that

20  there was probable cause for the issuance of the complaint

21  warrant in this matter.

22           That resolves the issue of probable cause in the

23  Eastern District of Pennsylvania as well as the District of

24  Columbia.  There is probable cause.

25           What is the position of the (indiscernible) well

1   first of all, this is a motion by the Government for removal to

2   the District of Columbia to respond to these charges.  These

3   charges are not requested in the Eastern District of

4   Pennsylvania.  They were issued in the District of Columbia.

5           As a result, there is a (indiscernible) to determine

6   whether Mr. Sanford's going to be removed to that District.

7           Mr. Sanford is entitled to a hearing to determine

8   whether he is the same individual who is charged in the

9   District of Columbia.

10          Mr. Latoison, tell me whether or not your client

11  wishes to have (indiscernible)?

12          MR. LATOISON:  Yes, Your Honor.  We do not wish to

13  contest the removal of the case to the D.C. jurisdiction, Your

14  Honor.

15          THE COURT:  Thank you very much.  The Government's

16  motion for removal is granted.  And I find that he is in fact

17  the same person that is charged in the criminal complaint that

18  I just reviewed with him.

19          What is the position of the United States with regard

20  to detention pending removal?

21          MS. IYENGAR:  Your Honor, as the Government's

22  detention member stated, the Government is asking that the

23  Defendant be detained pending transport to the (indiscernible)

24  he has to answer for these charges.

25          I can go through the Government's argument at this

1     time.  I'm not sure if the Court would like to hear from my

2     argument first or like to hear from the Defense first?

3                 THE COURT:  Well, am I correct, this is not a

4     presumption of the (indiscernible)?

5                 MS. IYENGAR:  Yes, that's correct.  There's

6     (indiscernible).

7                 THE COURT:  All right, then I would say that the

8     burden is on the United States.

9                 But just for clarity, I think, Mr. Latoison, you said

10    you are contesting the Government's motion for detention; am I

11    correct?

12                MR. LATOISON:  That is correct, Your Honor.

13                THE COURT:  Well, I'm ready and available to hear the

14    Government's motion at this time.  If you would like to

15    proceed, you may do so.

16                MS. IYENGAR:  Yes, Your Honor, thank you.  So the

17    Government believes both for the safety of the community, as

18    well as to ensure the Defendant's appearance in court for his

19    next court date in the District of Columbia, that the Defendant

20    does need to be detained pending transfer to the District.

21                In terms of the safety of the community prongs of the

22    argument, this was the defense -- as the Court can see from

23    reading the papers that were submitted to the Court that were

24    committed against a law enforcement officer, several federal

25    law enforcement officers.

1    It was a violent offense and it was an offense that
2  involved the use of a dangerous weapon, which was a fire
3  extinguisher in this case.
4    Not only that, but the Defendant also travelled down
5  to the District of Columbia as part of a group who attended
6  both the rallies with the President, and then, subsequently
7  went to the U.S. Capitol grounds for the purposes of basically
8  participating in a riot that was an insurrection against the
9  United States Government.
10    So I think based on that, that establishes that there
11  is a danger to the community of allowing Mr. Sanford to remain
12  on release pending these charges.
13    In terms of the -- ensuring his appearance at his
14  next court date, I would just like to note that the Defendant
15  did cross multiple state lines to travel down to the District
16  of Columbia to commit the offenses that are outlined in the
17  complaint in this case.
18    And as far as the Government is aware, Mr. Sanford
19  has no ties to the District of Columbia.  And that makes the
20  Government more concerned about his ability to appear at his
21  next court date in the District.
22    THE COURT:  I have a question for you.  You referred
23  to the case that was submitted to me, I -- the papers include,
24  and I'll identify them, the complaint and warrant, as well as
25  the probable cause affidavit supporting that.

1               Are you referring to the probable cause affidavit
2    when you refer to the papers?
3               MS. IYENGAR:  Yes, I'm referring to that, yes.
4               THE COURT:  Has Mr. Latoison for the Defendant been
5    presented a copy of the probable cause affidavit?
6               MS. IYENGAR:  Yes, I did submit a copy of the
7    probable cause affidavit, as well as the complaint and the
8    arrest warrant (indiscernible).
9               THE COURT:  Okay, very good.  Thank you.  And the
10   reason I raise that, I just want to make sure that if I rely on
11   it, it's properly (indiscernible)?
12              MS. IYENGAR:  Absolutely.
13              THE COURT:  Thank you.
14              Mr. Latoison, you may proceed.
15              MR. LATOISON:  Your Honor, thank you for allowing me
16   to be heard.  I do recognize the fact that there were plenty of
17   individuals who may accurately be depicted as AUSA has stated
18   for the record of traveling for the purpose of a riot or
19   traveling for the purpose to basically (indiscernible) that she
20   indicates in her argument.
21              That could be not further from the truth when it
22   comes to my client and my client's reasonings for travelling to
23   D.C., having not been there since the age of 13 years old and
24   had -- went down there for protests on a free bus that was
25   being offered for free rides.

1          That is not an accurate reference to my client as
2   this was a pre-planned (indiscernible).  So (indiscernible) get
3   into an interaction that (indiscernible) position.
4          I am well aware of the fact that, you know, there's
5   information that's out that there were plenty of individuals
6   that were doing those things for those reasons.
7          So I would first argue to the Court that just the
8   idea that he travelled statewide at this time as accurate, this
9   information that he goes -- is being referenced Mr. Sanford.
10         Also, with his ability to -- for him not to be a
11  flight risk, he was a firefighter for 26 years without any
12  issues.  You know, he retired in March 1st of 2020, I think had
13  no write-ups, did a great job as a firefighter.
14         He's lived in the same address for the last 23 years.
15  Been married for at least 22 years.  He has a 23-year-old, a
16  16-year-old, and a 13-year-old child.
17         He's never had an arrest in his entire life.  He's
18  never been in any kind of rehab for any kind of drugs or
19  alcohol, never had any kind of mental issues (indiscernible),
20  never been committed in any way, shape, or form.
21         He has a mortgage.  He is a father.  Most
22  importantly, Your Honor, I've already spoke to the Court,
23  understanding that he had (indiscernible).
24         And I've been in touch with the AUSA yesterday.  AUSA
25  had put me in touch with FBI agent.  The (indiscernible) they

1    asked that Mr. Sanford be at 5:45 a.m. this morning at a
2    location.
3            He was there at 5:30 early.  He showed up with his
4    passport as I indicated to him to do, so the passport would be
5    in federal custody.
6            He showed up one time and showed up early.  He showed
7    up as he was instructed.  He is not a flight risk.  I was not
8    able to have his family here with me at my location where I'm
9    at due to Covid, but I can tell you that, you know, he's
10   married, he has family members that are present at another
11   location.
12           He's also been under -- he's been under the, you
13   know, kind of the advice of a former District police officer
14   that was an officer for about -- I think about 30 years, who
15   originally contacted me with Mr. Sanford.  And that officer was
16   in contact with the FBI also.
17           So there's no flight risk here, Your Honor.  He has a
18   solid address, solid family ties, under counsel from myself,
19   under counsel for someone -- from a police officer.
20           He's not a danger or threat.  Again, he's not been to
21   D.C. since the age of 13.  He's 55 years old.  He has no reason
22   to go back there.  We are completely okay with any kind of
23   parameters that Your Honor feels is appropriate.
24           He is not part of any extremist groups.  He's not a
25   part of any groups that were a part of attempting what took

1  place, which was a blemish, obviously, in our democracy.

2  He's not part of any of those groups.  He was accused
3  of being around the back of the Capitol building, never being
4  accused of going inside the building, Your Honor.

5  So, for all those reasons, including the fact that
6  he's taking this seriously, as well as being (indiscernible),
7  and we show nothing but cooperation, and he claims to continue
8  that path, Your Honor, I ask that he be released to be able to
9  go home back to his family and to remain there, Your Honor,
10 pending the disposition of his case.

11  Thank you for allowing me to speak, Your Honor.

12  THE COURT:  Thank you very much.  I'll allow the
13 Government brief rebuttal, but it has to be rebuttal, not new
14 argument.

15  MS. IYENGAR:  Yes, Your Honor.  I did just want to
16 respond to what Mr. Latoison said about not being affiliated
17 with any organization, extremist organizations as he put it.

18  There was a search warrant that was executed at the
19 Defendant's home this morning.  And there was paraphernalia.  I
20 believe there was a T-shirt that was associated with the Proud
21 Boys group, which has been affiliated with some of the activity
22 that was taken -- that was taking place in the District on
23 January 6th.  So I did just want to make the Court aware of
24 that.

25  THE COURT:  Thank you.

1            I think Mr. Latoison has very eloquently argued the
2    question of risk of flight.
3            I don't agree with you, Mr. Latoison, that there's no
4    risk of flight, but I do believe that based upon on the facts
5    that are before me, I could impose conditions or a combination
6    of conditions that would resolve the concern about risk of
7    flight in this case.
8            So let me address the danger to the community.  He is
9    not charged with simply taking a free bus ride to Washington,
10   D.C.  He's charged with the offenses that I've just raised.
11   Those involve breach of the Capitol.
12           The reason I asked the United States whether she was
13   referring to and whether you have the probable cause affidavit
14   because that affidavit has a portion of a video, in one phone
15   picture, which has Mr. Sanford poised to strike a Capitol
16   police officer or other officers with a fire extinguisher.
17           He is in the crowd that has breached the perimeter
18   (indiscernible) of the Capitol.  That clearly is a danger to
19   the community.  It's a danger to the Capitol.  It was a danger
20   to our democracy, our legislators.
21           The question is other conditions or a combination of
22   conditions that I can impose that would resolve that.  I've
23   listened to the arguments that were very well presented by both
24   counsel in this matter and I cannot find a condition or
25   combination of conditions that would resolve that danger.

1          On that basis, I will grant the Government's Motion
2     for Detention based upon danger to the community, not upon risk
3     of loss -- risk of flight, I should say.
4          And remand him to the custody of the Marshal Service
5     and his removal to respond to these charges in the District of
6     Columbia.
7          Is there anything further with regard to this event
8     this afternoon?
9          MR. LATOISON:  Not from me, Your Honor.
10         MS. IYENGAR:  And not from the Government.
11         THE COURT:  All right, if there's nothing further,
12    thank you very much.  Everyone is excused and Court is
13    adjourned for the day.  I'm sorry, one -- my assistant is
14    telling me one more thing.
15         THE CLERK:  I just need the waiver of identity form
16    executed on his behalf.  So I will be sending it to his
17    attorney by email, so that you may execute it on his behalf and
18    get it back to me.
19         THE COURT:  Is that fine, Mr. Latoison?
20         MR. LATOISON:  Yes, sir.
21         THE COURT:  Yeah, you can do that on behalf of Mr.
22    Sanford.
23         All right, thank you very much.  If there's nothing
24    further, as I said, Court is adjourned for the day.  Thank you
25    very much.

Case 1:21-cr-00086-PLF   Document 8-1   Filed 02/27/21   Page 17 of 18

17

1          MR. LATOISON:  Thank you, Your Honor.
2     (Proceedings concluded at 2:11 p.m.)

**CERTIFICATE**

I, Chris Hwang, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____     February 22, 2021
Chris Hwang                Date
Transcriber