UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT SANFORD,<br><br>Defendant. | Case No. 21-cr-86 (PLF) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Robert Sanford to seventy one months' incarceration, three years of supervised release, restitution in an amount to be determined as at a later date , and the mandatory $100 special assessment for each count of conviction.

I.      INTRODUCTION

The defendant, Robert Sanford, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars in losses.[1]

---

[1] As of October 17, 2022, the approximate losses suffered as a result of the siege at the United States Capitol was $2,881,360.20. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

1

Sanford approached the Lower West Terrace of the Capitol building, one of the most violent locations of the Capitol riot. After rioters breached the police line on the Lower West Terrace, Sanford threw a fire extinguisher at a group of officers. Sanford struck three police officers in the head with the fire extinguisher. Sanford also threw an orange traffic cone at a police officer.

The government recommends that the Court sentence Sanford to 71 months' incarceration, which is within the middle of the range of the advisory Guidelines' range of 63-78 months, which the government submits is the correct Guidelines calculation. A 71-month sentence of incarceration reflects the gravity of Sanford's conduct.

## II.     FACTUAL BACKGROUND

### A.     The January 6, 2021 Attack on the Capitol

The government refers the Court to the stipulated Statement of Offense filed in this case, ECF 46, for a short summary of the January 6, 2021 attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020 presidential election.

### B.     Defendant's Role in the January 6, 2021 Attack on the Capitol

*Approach to the Capitol*

Robert Sanford, a retired firefighter, participated in the January 6 attack on the Capitol. His crimes are documented through a series of open source videos provided to the FBI, body worn camera videos, and surveillance videos.

Sanford traveled to Washington, D.C. from his home in Pennsylvania in the very early hours of January 6. Sanford traveled by bus with other individuals who intended to attend the "Stop

the Steal" rally on the Ellipse. After attending the rally, Sanford walked to the restricted grounds of the United States Capitol and approached the West front of the United States Capitol building.

After other rioters broke through the police line on the Lower West Terrace beneath the inaugural stage, Sanford approached the Lower West Terrace. Sanford, wearing a black and grey jacket, black backpack, and blue knit hat, threw an orange traffic cone at United States Capitol Police Sergeant A.G., pictured below from Exhibit 1:



*Image 1*

After yelling obscenities at officers for a few minutes and calling them "traitors," Sanford

3

then picked up a fire extinguisher, as pictured below from Exhibit 1, and threw it into a crowd of officers comprised of both United States Capitol Police officers and Metropolitan Police Department officers.



*Image 2*



*Image 3*

United States Capitol Police Officer W.Y. and Metropolitan Police Department Sergeant P.R. were both struck in the head by the fire extinguisher.

After Sanford threw the fire extinguisher into the crowd of officers, he remained on the Lower West Terrace for several minutes before leaving of his own accord.

After an arrest warrant was issued for him in this matter, Sanford turned himself into law enforcement and was arrested on January 14, 2021. Following his arrest, Sanford debriefed with law enforcement regarding other individuals who attended the Stop the Steal rally with him.

### *Injuries*

Sergeant P.R. felt pain immediately after being struck in the head and sustained a bump and swelling on his head as a result of Sanford's conduct. Officer W.Y. was wearing a helmet at the time that the fire extinguisher struck him. However, the fire extinguisher was thrown with such

force that Officer W.Y. still experienced a headache after being struck in the head with it, and went to the hospital for a medical examination, but did not have any further injuries.

### III. THE CHARGES AND PLEA AGREEMENT

On November 10, 2021, a federal grand jury returned a superseding indictment charging Sanford with six counts, including Civil Disorder in violation of 18 U.S.C. § 231(a)(3), Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. § 111(a)(1) and (b), Entering or Remaining in any Restricted Building or Grounds with a Deadly or Dangerous Weapon in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A), Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2), Act of Physical Violence in the Capitol Grounds or Buildings in violation of 40 U.S.C. § 5104(e)(2)(F), and Parading Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G).

On September 23, 2022, the defendant pled guilty to Count Two, Assaulting, Resisting or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. § 111(a)(1) and (b).

### IV. STATUTORY PENALTIES

The defendant now faces sentencing on Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. § 111(a)(1) and (b).

As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to 20 years of imprisonment, a term of supervised release of not more than three years, a fine up to $250,000, and a mandatory special assessment of $100 for Count Two, Assaulting, Resisting, or Impeding Certain Officers.

### V. THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007).

The government agrees with the Guidelines calculation in the PSR. The PSR correctly calculates that the defendant's total offense level is 26.

According to the PSR, Sanford's adjusted offense level under the Sentencing Guidelines is as follows:

| | | |
|---|---|---|
| U.S.S.G. § 2A2.2(a)[2] | Base Offense Level | **14** |
| U.S.S.G. § 2A2.2(b)(2)(B) | Use of a Dangerous Weapon | **+4** |
| U.S.S.G. § 2A2.2(b)(3)(A) | Bodily Injury | **+3** |
| U.S.S.G. § 2A2.2(b)(7) | Conviction under 18 U.S.C. § 111(b) | **+2** |
| U.S.S.G. § 3A1.2(b) | Government Official Victim (Application of Chapter 2, Part A of U.S.S.G)[3] | **+6** |
| | **Adjusted Offense Level:** | **29** |
| U.S.S.G. § 3E1.1(a)-(b) | Acceptance of Responsibility | **-3** |
| | **Total Offense Level:** | **26** |

*See* PSR ¶¶ 31-43. As indicated in the plea agreement, parties agreed to the applicability of all of the above Guidelines with the exception of the Bodily Injury enhancement in U.S.S.G. § 2A2.2(b)(3)(A), which the parties reserved the ability to seek from or oppose before the Court.

---

[2] § 2A2.2 applies here because Sanford's conduct involved aggravated assault. *See* U.S.S.G. § 2A2.4(c)(1).

[3] For the Official Victim adjustment, the PSR mistakenly uses language for U.S.S.G. § 3A1.2(c) ("the defendant, in a manner creating substantial risk of serious bodily injury, knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense"); however, the PSR correctly references U.S.S.G. § 3A1.2(b) as the applicable adjustment, which is also the guideline stipulated to by the parties. PSR ¶ 36; Plea Agreement ¶ 4.A.

Plea Agreement, ¶ 4.A. As detailed below, the government agrees with Probation's application of the Bodily Injury enhancement in U.S.S.G. § 2A2.2(b)(3)(A) in the instant case.

### A. The PSR Correctly Applies the Enhancement Under USSG § 2A2.2(b)(3)(A).

As the plea agreement notes, the defendant reserved the right to contest the application of USSG § 2A2.2(b)(3)(A), which applies a three-point enhancement for a victim sustaining a bodily injury. USSG § 1B1.1 defines bodily injury as "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." A victim sustains "bodily injury" even where the injury is temporary and limited. *See United States v. Blanco*, 27 F.4th 375, 382–83 (5th Cir. 2022) (victim suffered neck pain, moderate bruising, and torn out hair); *United States v. Lister*, 229 F. App'x 334, 339–41 (5th Cir. 2007) (victim sustained "numerous scratches, bruises, lumps, and bumps" and ankle pain); *United States v. Ledford,* 218 F.3d 684, 691 (7th Cir. 2000) (bodily injury where victim suffered "bruising on her side and arm").

As a general matter, being struck in the head by a fire extinguisher is the kind of assault that would lead a person to seek medical attention. Sanford threw a fire extinguisher from what appears to be approximately 15-20 feet from the officers. Sanford also specifically targeted that group of officers for his assault. Sergeant P.R. sustained a bump and swelling on his head and Officer W.Y. suffered a headache following the assault and went to the hospital for a medical exam. Both officers experienced an injury that was "painful and obvious", and Officer W.Y. sought medical attention following the assault. *United States v. Shamburger*, 275 Fed.Appx. 311 (5th Cir., 2008) (finding that the enhancement for bodily injury applied where the victim stated that they suffered a laceration and experienced pain); *United States v. Hight*, 695 Fed.Appx. 532 (11th Cir., 2017) (finding that trial court did not commit plain error in applying the enhancement

for bodily injury where the defendant punched the agent in the mouth, which resulted in a cut to the agent's lip, as well as swelling and bruising). Therefore, the three-level enhancement under USSG § 2A2.2(b)(3)(A) should apply.

## VI.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of a lengthy term of incarceration.

### A.    Nature and Circumstances of the Offense

Sanford's felonious conduct on January 6, 2021 was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. The nature and circumstances of Sanford's offense were of the utmost seriousness, and fully support the government's recommended sentence of 71 months' incarceration and three years' supervised released. Sanford entered the Lower West Terrace after other rioters broke through the police line. Sanford, a retired firefighter who should have known the potential injury that a fire extinguisher could cause, threw a fire extinguisher and a traffic cone at officers who were trying to prevent a further breach of the Capitol building while rioters unceasingly assaulted them. Sanford also hurled obscenities and insults at the law enforcement officers on the Lower West Terrace, calling them "traitors." The defendant's actions on January 6 show an absolute disregard for the rule of law coupled with a willingness to engage in violence.

The seriousness of this offense, including Sanford's entry into a restricted area and Sanford's assault on multiple law enforcement officers, first by throwing traffic cone and then escalating to throwing a fire extinguisher directly at officers' heads, demands a lengthy sentence

9

of imprisonment.

### B. The History and Characteristics of the Defendant

As noted above, Sanford is a retired firefighter. However, despite working in rescue and emergency situations for years, when faced with the violent and chaotic conditions on January 6, 2021, instead of seeking to lend aid, medical expertise, or experience, Sanford joined the melee and began assaulting officers who were already under attack. Furthermore, one of his assaults included throwing a fire extinguisher, an instrument that he was uniquely familiar with and should have known how much damage it could cause.

Sanford does not have any prior criminal convictions.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Sanford's criminal conduct, assaulting law enforcement officers, is the epitome of disrespect for the law. When Sanford entered the Lower West Terrace, it was clear that officers were trying to maintain order after rioters broke through the police line. Sanford not only assaulted officers, but also verbally engaged with the officers who were under attack, calling them incendiary names including "traitors." Police officers were overwhelmed, outnumbered, and in serious danger. The rule of law was not only disrespected; it was under attack that day. A lesser sentence would suggest to the public, in general, and other rioters, specifically, that attempts to obstruct official proceedings and assaults on police officers are not taken seriously. In this way, a lesser sentence could encourage further abuses. *See Gall*, 552 U.S. at 54 (it is a "legitimate concern that a lenient sentence for a serious offense threatens to promote disrespect for the law").

### D.  The Need for the Sentence to Afford Adequate Deterrence

10

*General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C. § 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[4] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration. Sanford engaged in multiple acts of violence towards law enforcement officers and also verbally abused the officers who were trying to maintain order on the Lower West Terrace. While Sanford has no criminal history, his conduct here is very concerning as it not only involved entering a restricted area, but remaining in that area, and engaging in multiple types of assaultive conduct. A significant period of incarceration will ensure specific deterrence in this matter.

### E.     The Importance of the Guidelines

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying

---

[4] *See* 18 U.S.C. § 2331(5) (defining "'domestic terrorism'").

11

with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise,'" and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

### F.   Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017); *accord* United States v. Sanchez, 989 F.3d 523, 540 (7th Cir. 2021). Consequently, a sentence within the Guidelines range will ordinarily not result in an unwarranted disparity. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Hrg. Tr. at 49 ("as far as disparity goes, … I am being asked to give a sentence well within the guideline range, and I intend to give a sentence within the guideline range.") (statement of Judge Chutkan).

Moreover, Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of

sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[5]

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id.* ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").[6]

---

[5] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

[6] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Palmer*, 21-cr-328 (TSC), the defendant threw a wood plank at officers, then deployed the contents of a fire extinguisher directly into the tunnel and threw the empty extinguisher at the officers. For the next several minutes, Palmer continued to push and throw objects at the officers in the tunnel. Later, on the Upper West Plaza, Palmer approaching a line of officers, yelled at them, and threw a pole at them. Palmer pled guilty to one count: a violation of 18 U.S.C. § 111(a)(1) and (b). Judge Chutkan imposed a 63-month sentence of incarceration, within the 63-78 months Guidelines range in that case.[7] Sanford's conduct is very similar to Palmer's conduct in that Sanford also threw objects at officers and yelled at officers.

In *United States v. Devlyn Thompson*, 21-cr-461 (RCL), the defendant and other rioters fought police officers in the LWT tunnel for approximately 13 minutes. Specifically, Thompson encouraged other rioters, threw objects at officers, and hit one officer on the hand with a metal baton causing a bruise. Thompson self-surrendered and agreed, before he was arrested, to plead

---

BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

[7] Although Palmer did not receive the three-level increase for bodily injury pursuant to U.S.S.G. § 2A2.2(b)(3), as is warranted for Sanford's conduct in the instant case, Palmer also did not receive a three-level reduction pursuant to U.S.S.G. § 3E1.1 because of his post-plea conduct. Had he received that reduction, Palmer's guideline range would have been 46-57 months' incarceration.

guilty to a violation of 18 U.S.C. § 111(a)(1) and (b). In that case, because the plea agreement did not authorize the Government to seek a bodily injury enhancement under 2A2.2(b)(3), Thompson's Guidelines range was 46-57 months. The Government recommended a sentence of 48 months' imprisonment (towards the lower end of the Guidelines range), in part based on Thompson's turning himself in and then cooperating with the Government by providing information at multiple debrief meetings before accepting a plea offer. Judge Lamberth imposed a 46-month sentence of incarceration.

A sentence of 71 months, which is the mid-range of the sentencing guidelines, is aligned with the sentences given to individuals who have Accordingly, the instant recommendation does not constitute an unwarranted sentencing disparity.

## VII. RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes."[8] *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011). Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to

---

[8] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), which "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, does not apply here. *See* 18 U.S.C. § 3663A(c)(1).

15

impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Sanford must pay $2,000 in restitution to the Architect of the Capitol, which reflects in part the role Sanford played in the riot on January 6.[9]  Plea Agreement, ¶ 10. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $1,495,326.55" in damages,[10] a figure based on loss estimates supplied by the Architect of the Capitol in mid-May 2021. *Id.* Sanford's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol. *See* PSR ¶ 101.

In addition, the parties agreed that, under 18 U.S.C. §§ 3663(b)(2) and 3663A(b)(2), Sanford must also pay restitution to "all victims who suffered bodily injury as a result of [his] conduct," including Officer W.Y. and victims "identified at or before sentencing in this case." Plea Agreement, ¶ 10.  Furthermore, a violation of 18 U.S.C. § 111(b) is a crime of violence under the Mandatory Victims Restitution Act ("MVRA"), Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A). *See* 18 U.S.C. § 3663A(c)(1)(A)(i) (requiring mandatory restitution for "a crime of violence, as defined in [18 U.S.C.] section 16"). Therefore, restitution for that offense is mandatory. 18 U.S.C. § 3663A(a)(1). The victims in this case, Sergeant P.R. and Officer W.Y., suffered bodily injury as a result of Sanford's conduct. Both victims have

---

[9] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

[10] As noted above, the Government's current estimate of the damages caused by the riot on January 6 is more than $2.8 million.

indicated that they will provide a victim impact statement at the sentencing hearing. The Government has also requested information from Officer W.Y. and the United States Capitol Police (which incurred costs on Officer W.Y.'s behalf) and from Sergeant P.R. and the Metropolitan Police Department (which also incurred costs on Sergeant P.R.'s behalf) regarding qualifying expenses. Officer W.Y. provided medical bills totaling $3,798, which resulted from the treatment he received in connection with Sanford striking him in the head with the fire extinguisher. [11] Accordingly, the Court should defer entry of a restitution order at this time. The Government requests final determination of restitution be delayed for 90 days following the sentencing hearing so it can determine those costs borne by the victims, Officer W.Y. and Sergeant P.R., and the United States Capitol Police and Metropolitan Police Department. *See* 18 U.S.C. § 3664(d)(5).

## VIII. CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a sentence of imprisonment of 71 months' incarceration, which is a mid-range sentence as calculated by the government and as agreed upon by the parties in the plea agreement, three years' supervised release, restitution in an amount to be determined as at a later date, and the mandatory $100 special assessment for each count of conviction.

---

[11] If the United States Capitol Police and the Metropolitan Police Department had expenses for medical treatment of any of those officers that are not covered by the $1.4 million loss figure identified above, the MPD is entitled to restitution from Sanford for expenses attributable to the offenses of conviction. *See* 18 U.S.C. § 3664(j)(i) ("If a victim has received compensation from insurance *or any other source* with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation") (emphasis added).

          Respectfully submitted,

          MATTHEW M. GRAVES
          UNITED STATES ATTORNEY


BY: _____
          JANANI IYENGAR
          NY Bar No. 5225990
          Assistant United States Attorney
          U.S. Attorney's Office
          555 4th Street, N.W.
          Washington, D.C. 20530
          Office: 202-252-7760
          Janani.iyengar@usdoj.gov